IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES KATES,

    Plaintiff,

v.                                                                   Case No. 18-1146-JWB

CSAA GENERAL INSURANCE
COMPANY,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 35.) The motion is fully briefed and is ripe for review. (Docs. 36, 37.) For the reasons stated herein, the motion for summary judgment (Doc. 35) is DENIED.[1]

**I. Facts**

In keeping with the standards governing motions for summary judgment, the following statement of facts views the evidence, and all reasonable inferences therefrom, in the light most favorable to Plaintiff, the non-moving party.

On December 27, 2017, Plaintiff was the front-seat passenger in a Ford Fusion driven by his wife, Lawana Martin ("Martin"), when they were involved in an automobile accident at the intersection of 47th Street South and Washington Street in Wichita, Kansas. Martin was traveling westbound on 47th Street South and was making a left turn onto southbound Washington. Roberto Velasco-Lopez ("Velasco") was traveling eastbound on 47th Street in a Volkswagen Jetta. Martin

---

[1] Although Defendant requested oral argument in connection with the motion (Doc. 37 at 10), the court determines that oral argument would not assist in deciding the issues presented. *See* D. Kan. R. 7.2.

turned left in front of Velasco's vehicle, which struck the passenger side of Martin's vehicle. The traffic light for Martin's left turn was a solid green signal. Under Kansas law, this signal required Martin to yield to oncoming traffic before entering the intersection.

The circumstances leading to the accident were as follows. As Martin approached the intersection to turn, she was traveling about 15 or 20 miles per hour. (Doc. 35-1 at 34.) She had a clear view; there was no traffic in front of her. (*Id.*) When she began to turn, she saw Velasco's Jetta approaching. (*Id.*) She had not seen the vehicle up to that point. (*Id.* at 35.)

Plaintiff, in the passenger seat, could not see Velasco's vehicle before Martin began her turn.[2] As Martin was turning, Plaintiff saw Velasco's vehicle approaching and hollered, "Hit it!" (Doc. 35-1 at 42.) He meant for Martin to step on the accelerator to get clear of Velasco's car. Plaintiff saw Velasco's vehicle was traveling at a high rate of speed. He estimates the Jetta was going sixty miles per hour. (Doc. 35-1 at 28.) The next thing Plaintiff remembered after that was that he was in an ambulance.[3] (*Id.* at 23, 28.)

Martin does not know how fast Velasco's vehicle was going, but thinks it was going faster than the posted speed limit of 40 miles per hour. (Doc. 35-1 at 38.)

Makenzie Tamrakar was working as a server at an IHOP south of the intersection on the date of the accident. She was waiting for customers to arrive and was looking out a window. (Doc. 35-1 at 49.) She "saw a person going eastbound, I could see them speeding." (Doc. 35-1 at 50.) The car she saw speeding was passing another vehicle that was also headed east. She estimates the speeding car – which a jury could reasonably conclude was Velasco's - was going 50 or 60

---

[2] Plaintiff testified there was a car opposite the Ford Fusion in the eastbound lane of 47th street waiting to turn left onto northbound Washington, which somewhat obstructed his view of view of the oncoming traffic. (Doc. 35-1 at 22.) Martin, however, testified there was no car in the left turn lane opposite her and there was nothing obstructing her view. (Doc. 35-1 at 33-34.)

[3] Plaintiff suffered some amnesia after the accident, but according to Martin, while in rehabilitation Plaintiff recalled that Defendant's vehicle was "coming like a bat out of, you know what." (Doc. 35-1 at 46.)

miles per hour. (Doc. 35-1 at 62-63.)[4] Tamrakar had worked at IHOP for about eight months and had seen thousands of vehicles traveling eastbound on this portion of 47th Street South, where the speed limit was 40 miles per hour. (Doc. 35-1 at 65.) Tamrakar saw a vehicle "turning in" and saw the accident involving the speeding car. (*Id.* at 50.)

There were no pre-impact skid marks from either vehicle. (Doc. 35-1 at 70.) The right rear wheel of the Fusion was knocked off from the impact. (*Id.*) Both vehicles had to be towed from the scene. (*Id.*)

Plaintiff asserts eight specific contentions of negligence against Velasco in the Pretrial Order: a. Driving at a speed in excess of the posted speed limit; b. Inattentive operation of a motor vehicle; c. Failure to maintain a proper lookout; d. Failure to drive with reasonable care; e. Failure to give warning; f. Failure to drive at a safe speed; g. Failure to maintain control of a motor vehicle; and h. Failure to take evasive action. (Doc. 34 at 3.)

None of Plaintiff's witnesses have any special expertise in visual estimation of vehicle speed or in accident reconstruction. Defendant cites the opinion of Ron Blevins, an accident reconstructionist retained by Defendant, who opines that there is no scientifically reliable method available of calculating the speed of Velasco's vehicle. (Doc. 35-1 at 74.)

**II. Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are

---

[4] In addition to the deposition testimony, Plaintiff has submitted affidavits allegedly from Tamrakar, Martin, and Plaintiff. The one signed by Tamrakar appears to reverse the roles of the two vehicles involved, stating that the Jetta was turning left and the Fusion was traveling at a speed approaching 60 miles per hour. (Doc. 36-1.) Tamrakar's deposition testimony makes clear she does not remember the makes and models of the vehicles involved, only that she saw a speeding car pass another car and then collide with a third car. ((Doc. 35-1 at 58-59.) The affidavits in the names of Plaintiff and Martin (Docs. 36-2, 36-3) are not signed. In light of these deficiencies, the court considers only the deposition testimony in the above statement of facts.

3

"genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.* The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Analysis

Defendant argues there is no evidence to support Plaintiff's claim of negligence, separately challenging the allegations that Velasco was speeding from the remaining allegations of negligence. (Doc. 35-1 at 6.) As explained below, the evidence cited on summary judgment shows a genuine dispute of material fact as to whether Velasco was speeding at the time of the accident. The motion for summary judgment will accordingly be denied.

Defendant argues the opinions of Plaintiff, Martin, and Tamrakar that Velasco was speeding lack foundation for admissibility under Fed. R. Evid. 701. (*Id.* at 9.) With respect to Plaintiff and Ms. Tamrakar, Defendant argues their opportunities to observe Velasco's vehicle were so limited that their opinions are not rationally based on their perceptions. (*Id.* at 12.)

Rule 701 limits opinion testimony from a non-expert to an opinion that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and 3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The purpose of Rule 701 is "to exclude testimony where the witness is no better suited than the jury to make the judgment at issue, providing

4

assurance against the admission of opinions [that] merely tell the jury what result to reach." *United States v. Marquez,* 898 F.3d 1036, 1049 (10th Cir. 2018) (citations omitted.)

Federal courts applying Rule 701 have regularly allowed lay witness opinion testimony concerning the speed of a vehicle.[5] *See Gust v. Jones,* 162 F.3d 587, 595 (10th Cir. 1998) (district court did not abuse its discretion in allowing witness who had followed a vehicle for miles to testify that the vehicle was traveling within posted speed limit); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) (noting that "persons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions at to matters such as the speed of an automobile under their observation"); *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) ("It's commonly understood that lay witnesses may estimate size, weight, distance, speed and time even when those quantities could be measured precisely.") (citing 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 1977 (James H. Chadbourn, ed. red. ed. 1978)).

Defendant is correct that such testimony "isn't automatically admissible" under Rule 701. (Doc. 35-1 at 13.) But contrary to Defendant's contention, the record here sufficiently shows the opinions of Plaintiff and Ms. Tamrakar are rationally based on their perception within the meaning of Rule 701(a).[6] The "rationally based on perception" element has been said to embody two

---

[5] Kansas courts applying an analogous state rule take a similar position. Kansas courts "long ago recognized that lay opinions on the observed speed of an automobile are proper," so long as the opinion is rationally based on the perception of the witness and is helpful to a clearer understanding of the testimony. *Hampton v. State Highway Comm'n*, 209 Kan. 565, 583, 498 P.2d 236, 251 (1972) (citing *Miller v. Jenness*, 84 Kan. 608, 114 P. 1052 (1911). *See Miller,* 84 Kan. at , 114 P. at 1053 ("Probably no person can stand and look at a moving vehicle of any kind and tell the exact rate of speed at which it is moving, but people generally in this country are accustomed to seeing moving trains [and] automobiles … and any intelligent person, who has given attention thereto, can give a reasonable accurate estimate of the rate of speed that any of these vehicles are moving when observed by him. The extent of his observation goes to the weight of his testimony…."); *Cf. Stafford v. Karmann*, 2 Kan. App. 2d 248, 250, 577 P.2d 836, 838 (1978) (opinion as to vehicle speed excluded where proponent "did nothing" to show the basis for it and failed to establish "that the witness drove a car, that he had any sort of basis or experience in judging speeds, or how long he observed the two vehicles before they crashed.")

[6] In view of this conclusion, the court need not address whether Martin's opinion regarding speed also satisfies Rule 701.

components: "(1) the witness must have perceived with his senses the matters on which his opinion is based, and 2) there must be a rational connection between the witness' opinion and his perception." Wright & Gold, *Federal Practice and Procedure: Evidence* § 6254 (West 1997). The perception requirement "stems from [Fed. R. Evid.] 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." *Dahlberg v. MCT Transp., LLC,* 571 F. App'x 641, 649 (10th Cir. 2014) (citation omitted.) Both Plaintiff and Ms. Tamrakar visually perceived Velasco's car while it was in motion. Plaintiff estimated he saw Velasco's car for three to five seconds before it hit the Fusion. (Doc. 35-1 at 23.) Tamrakar visually perceived Velasco's car from the window of the IHOP. She said the whole event "happened so quick" that she was not sure how long she was able to observe the car, but she agreed with defense counsel's suggestion that it could have been as little as one or two seconds. (*Id.* at 50, 60-61.) Nevertheless, a jury could reasonably find from her description of the event that she saw Velasco's car for a somewhat longer period. At any rate, Ms. Tamrakar's opinion, like that of Plaintiff's, is based on her personal visual perception of Velasco's moving vehicle.

The record also shows a rational connection between the opinions of these two witnesses and their perceptions. Plaintiff's estimate of speed was based in part on his perception that Velasco's car was going "[a] whole lot faster than what we were going," and from "seeing it moving, going down the road." (Doc. 35-1 at 28.) He estimated his wife's rate of speed at the time as 25-30 miles per hour. (*Id.* at 24.) Plaintiff also judged the speed from his observations that his wife would not have had time to avoid the collision due to "the speed he [Velasco] was going." (*Id.* at 24.) This testimony shows a rational connection between Plaintiff's opinion as to Velasco's speed and his perception. Ms. Tamrakar's testimony likewise shows a rational connection, as she

6

based her opinion in part on Velasco's rate of speed as compared to a vehicle that she saw him pass on 47th Street, on her observation of the accident itself, and on her background of having seen "thousands" of cars traveling this same portion of roadway.

Defendant points to weaknesses in these opinions, including the very limited time period the witnesses had to observe Velasco's vehicle. (Doc. 35-1 at 14-15.) But the court cannot say the witnesses could not have observed the car for the minimum amount of time necessary to make an informed and rational judgment about its speed. *Cf. Houston v. Smith,*, 2010 WL 4625680, at *4 (W.D. Pa. Nov. 5, 2010) ("Even a short glance can provide a lay witness with sufficient information to make an estimate of speed. While the short time frame could raise issues of credibility, standing alone it does not render the lay witness inappropriate.") (citation omitted.) There is evidence suggesting the witnesses observed the car long enough to have an informed opinion. Other factors raised by Defendant may impact the credibility of these opinions as well, such as Plaintiff's potential bias or his limited vantage point in the pathway of the oncoming vehicle, or Ms. Tamrakar's distance from the incident or the possibility that obstructions diminished her ability to see the vehicle. But these matters go to the weight of the opinions, not to their admissibility, and are therefore matters for the jury to weigh in its determination of the facts.

The court concludes these two opinions meet the "rational perception" requirement of Rule 701(a). Defendant does not claim the opinions fail to meet the requirements of subsection (b) or (c) of Rule 701, or that summary judgment is otherwise warranted on the allegations of speeding. Accordingly, the court concludes Plaintiff has cited evidence supporting his claim that Velasco was negligent for driving in excess of the speed limit and for failing to drive at a safe speed.

7

Aside from the allegation of speeding, Defendant asks the court to "narrow the contentions of [Plaintiff] for trial by dismissing those unsupported by evidence." (Doc. 35 at 1.) The court declines to do so. A reasonable jury viewing all circumstantial and direct evidence in the light most favorable to Plaintiff could find that Defendant was negligent in respects other than speeding.

**IV. Conclusion**

IT IS THEREFORE ORDERED this 3rd day of July, 2019, that Defendant's motion for summary judgment (Doc. 35) is DENIED.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE